1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIMAL SUSANTHA DIUNUGALA, an individual, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> JP MORGAN CHASE BANK, N.A.; THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A; AMERICAN HOME MORTGAGE SERVICING, INC.; POWER DEFAULT SERVICES, INC.; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 12cv2106-WQH-KSC <br><br> ORDER |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim (ECF No. 56), and the Motion to Vacate Motion to Certify Class and All Class-Related Dates (ECF No. 65) filed by all Defendants.

### BACKGROUND

On July 25, 2012, Plaintiff Nimal Susantha Diunugala initiated this action by filing the Complaint with the San Diego County Superior Court. (ECF No. 1-2). On August 24, 2012, all Defendants jointly filed a Notice of Removal to this Court,

alleging diversity jurisdiction.  (ECF No. 1).  On August 31, 2012, Defendants filed a motion to dismiss the Complaint.  (ECF No. 6).  On January 18, 2013, the Court granted Defendants' motion to dismiss the Complaint.  (ECF No. 15).

On May 19, 2013, Plaintiff filed the First Amended Complaint.  (ECF No. 19).  On June 6, 2013, Defendants filed a motion to dismiss the First Amended Complaint.  (ECF No. 20).  On October 3, 2013, the Court granted in part and denied in part Defendants' motion to dismiss, and dismissed all claims without prejudice except for the cause of action for violation of the Truth in Lending Act, 15 U.S.C. § 1641g.  (ECF No. 29).

On January 21, 2014, the Magistrate Judge issued an Order stating that "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed on or before February 21, 2014. Fact and class discovery are not bifurcated but class discovery shall be completed by all parties on or before April 25, 2014.... Plaintiff shall file a motion for class certification no later than June 27, 2014."  (ECF No. 43 at 1-2).

On May 29, 2014, the Court issued an Order granting Plaintiff's amended motion for leave to file a second amended complaint.  (ECF No. 54).

On June 6, 2014, Plaintiff filed the Second Amended Complaint.  (ECF No. 55).  On June 26, 2014, Defendants American Home Mortgage Servicing, Inc. ("AHMSI"), JP Morgan Chase Bank, N.A. ("JP Morgan"), Power Default Services, Inc. ("Power Default"), and The Bank of New York Mellon Trust Company, N.A. ("BONY") filed the motion to dismiss the Second Amended Complaint.  (ECF No. 56).  On August 20, 2014 Plaintiff filed an opposition to the motion to dismiss the Second Amended Complaint.  (ECF No. 75).

The Second Amended Complaint asserts the following causes of action: (1) negligence; (2) violation of Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (3) violation of Truth in Lending Act ("TILA"), 15 U.S.C. § 1641g; (4) cancellation of documents to set aside the foreclosure sale; (5) fraud; and (6) violation

of California Business & Professions Code § 17200.  The Second Amended Complaint asserts a class action pursuant to California Business & Professions Code § 17203 on behalf of the following putative class: "[a]ll California residential loan borrowers with loans that originated with American Brokers Conduit that were serviced by AHMSI at the time of their bankruptcy on or about August 6, 2007 and were performing loans;" "[a]ll ... borrowers who received conflicting notifications from defendant AHMSI, BONY or JP Morgan of the identity of their investor, or creditor as required under 15 U.S.C. §1641g after May 5, 2009;" and "[a]ll ... borrowers who received conflicting notifications from defendant AHMSI of the identity of their investor, or creditor as required under 12 U.S.C. §2605 within the past two years."  (ECF No. 55 ¶ 102).

On August 26, 2014, Defendants AHMSI, JP Morgan, Power Default, and BONY filed a reply to the Plaintiff's opposition to the motion to dismiss the Second Amended Complaint.  (ECF No. 76).

On June 27, 2014, Plaintiff filed a motion to certify class.  (ECF No. 57).  On July 21, 2014, Defendants filed the motion to vacate motion to certify class and all class-related dates.  (ECF No. 65).

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

American Home Mortgage Corp., doing business as American Brokers Conduit, and American Home Mortgage Servicing, Inc. ("AHMSI") are wholly owned subsidiaries of American Home Mortgage Holdings, Inc., which, in turn, is a wholly owned subsidiary of American Home Investment Corp.  (ECF No. 55 ¶ 4)

"In early 2006, Plaintiff purchased real property at 987 Merced River Road in Chula Vista, California, 91913 ... as his personal residence."  *Id*. ¶ 13.  "Plaintiff used approximately $206,458.33 of his cash savings as a down payment on the home to be secured by a conventional loan from American Broker Conduit."  *Id*. ¶ 14.  "[P]laintiff was not put in a conventional loan product.... Instead he was given a predatory LIBOR loan ... which did not accurately reflect the full amortizing monthly mortgage obligation."  *Id*. ¶ 15.  "[Plaintiff's] initial monthly payments were $1,752.06 per

month." *Id.* ¶ 15.

"JP Morgan [] and American Home Mortgage Investment Corp. and American Mortgage Corp. entered into a secured revolving warehouse facility on January 24, 2006 with JP Morgan as Administrative Agent and sole Lender pursuant to a Secured Credit Agreement granting a first lien and security interest in ... the pledged residential loans upon which the warehousing financing was to be extended." *Id.* ¶ 18. "On August 1, 2007, JP Morgan sent a Notice of Default to American Home Mortgage Interest Corp. and American Home Mortgage Corp. declaring a default under the [w]arehouse [f]acility." *Id.* ¶ 19. "[O]n or about August 3, 2007[,] American Broker Conduit (including AHMSI) was ordered to cease and desist all mortgage operations in California." *Id.* ¶ 35. "On August 6, 2007, American Home Mortgage Interest Corp. and American Home Mortgage Corp. filed bankruptcy under Chapter 11 of the U.S. Bankruptcy Code." *Id.* ¶ 20.

"After [Plaintiff] returned [from active military duty], ... [P]laintiff contacted [American Home Mortgage Servicing, Inc. ("AHMSI")] at phone number 1-877-304-3100 where he was directed to the Loan Administration – Research Department and explained that he wanted to modify his loan." *Id.* ¶ 28. "Plaintiff ... wanted a fixed rate conventional loan which he expected to receive when he originally bought the home." *Id.* ¶ 29. "In or about November 27, 2007, the AHMSI representative on the telephone, who did not disclose his name, told [P]laintiff he could obtain a fixed rate loan with payments similar to the monthly payment of $1,752.06 he was making per month, if he sent in an additional $31,752.06 to pay towards his principal." *Id.* ¶ 30. "AHMSI never informed Plaintiff of their bankruptcy filing that preceding August; and AHMSI never submitted a "Goodbye" letter to [P]laintiff to inform Plaintiff of any change in servicing or ownership." *Id.* ¶ 31. "So on November 27, 2007[,] [P]laintiff withdrew $30,000 from his IRA account and sent AHMSI an additional $31,752.06 ... in reliance on the statements made to him by AHMSI on the phone..." *Id.* ¶ 32. "AHMSI accepted and cashed the check, but AHMSI did not then offer [P]laintiff the refinancing of his loan

as promised." *Id.* ¶ 33.

"In late 2010, Plaintiff sought legal advice and hired the Law Offices of Shahnaz Hussain to assist him with negotiating a more favorable loan." *Id.* ¶ 71. "The law firm sent a Qualified Written Request ("QWR") to [P]laintiff's servicer, [D]efendant AHMSI." *Id.* ¶ 72. "By way of a letter dated January 11, 2011 [D]efendant AHMSI responded to the QWR and represented to [P]laintiff that the owner/servicer of his loan was 'Structured Asset Mortgage Investments II Trust 2006-AR5, Mortgage Pass-Through Certificates, Series 2006-AR5' (hereinafter the 'MBS trust')." *Id.* ¶ 73. The same letter also represented that 'The Bank of New York Mellon Corporation' [("BONY")]was the trustee of the MBS trust." *Id.* ¶ 74.

"Plaintiff was attempting to obtain a loan modification to allow [P]laintiff to remain in his home with an affordable mortgage. Plaintiff's loan applications were being denied based on 'missing paperwork' although [P]laintiff used a HUD approved agency, Community Housing Works to prepare and send his application in with all required documents." *Id.* ¶ 120.

"Six months after AHMSI represented that BONY was the trustee of the MBS trust and as such was the creditor of Plaintiff's loan, on June 15, 2011, [Defendant] Power Default [Services, Inc. (Power Default")] caused a Notice of Default and Election to Sell Under Deed of Trust ... to be recorded which stated it was for the benefit of ... JP Morgan ... as trustee for the holders of Structured Asset Mortgage Investments II Inc., Mortgage Pass-Through Certificates, Series 2006-AR5." *Id.* ¶ 174. "The [Notice of Default] stated Plaintiff was in default in the amount of $27,388.55 as of June 21, 2011," and the "Beneficiary was named 'JP Morgan [] as trustee of the MBS trust." *Id.* ¶¶ 175-76.

"Plaintiff ... alleges ... that his loan was not transferred to the SAMI 2006-AR5 mortgage backed securitized trust in 2006 or at any time prior to October 11, 2007." *Id.* ¶ 38. "American Broker[] Conduit's license was revoked on October 11, 2007 in California," and therefore "American Broker Conduit did not and could not authorize

any assignment of the Plaintiff's deed of trust or note after this time period." *Id*. ¶ 37. "Plaintiff ... further ... alleges ... that none of the loans 'originated' or 'sold' by American Broker Conduit that were earmarked for the SAMI 2006-[AR]5 and the sister Bear Stearns 2006-[AR]5 trust were ever executed, endorsed, properly transferred or otherwise properly delivered by American Broker Conduit to the trusts." *Id*. ¶ 39.

"On or about February 23, 2009, the U.S. Bankruptcy Court ... appointed ... Steven D. Sass as the Plan Trustee over the estate of American Home Mortgage entities, including ... American Broker Conduit." *Id*. ¶ 21. "Up to that time, [P]laintiff ... alleges ... that the Debtors in the Chapter 11 case, including American Broker Conduit ... never executed any mortgages, deeds of trust or security deeds granting JP Morgan a security interest in the assets," and "[b]ecause JP Morgan [] never acquired a valid, perfected security interest in any of the assets, [the assets] were still owned by the American Home Mortgage entities, including ... American Broker Conduit." *Id*. ¶ 22-23.

"HOMEWARD RESIDENTIAL SERVICES, INC. [formerly known as] [AHMSI] ... purported to purchase the same assets of the American Home entities as set forth in that certain Asset Purchase Agreement dated September 25, 2007." *Id*. ¶ 44. "As part of the Asset Purchase Agreement, STEVEN D. SASS ... as successor in interest to American Home Mortgage Corp., American Home Mortgage Investment Corp. and [AHMSI], asserted that he was supposed to collect reimbursement of all foreclosure services related to the Collateral Mortgages." *Id*. ¶ 45. "As a result, the debtor and trustee believed the Collateral Mortgages were part of the bankruptcy estate and had not been transferred to JP Morgan [] or Bear Stearns or EMC Mortgage Corporation." *Id*. ¶ 46. "However, as of February 7, 2014, Homeward Residential, Inc. who collected the foreclosure fees from the borrowers, like [P]laintiff and others refused to reimburse the plan trustee, STEVEN D. SASS." *Id*. ¶ 47. "Plaintiff ... alleges ... that the loan documents by American Broker Conduit, were not delivered to Bear Stearns, EMC, or JP Morgan [] for transfer into the SAMI 2006-[AR]5 trust until on or after February 2, 2011, if at all." *Id*. ¶ 49.

"[T]he terms of the Free Writing Prospectus for the SAMI-[AR]5 trust strictly prohibited the servicer from holding the loan file." *Id*. ¶ 50. "Wells Fargo Bank, N.A. never received the [P]laintiff's loan file according to the terms of the SAMI 2006-[AR]5 trust, in violation of the trust's terms." *Id*. ¶ 52. "Wells Fargo, N.A. never moved the U.S. Bankruptcy Court to obtain the loan files from [AHMSI] before they were destroyed on or about February 2, 2011." *Id*. ¶ 53. "As a result ... the SAMI-[AR]5 trust had no right to foreclose on Plaintiff's home or those similarly situated because the loans were never properly transferred or delivered by American Broker Conduit to the SAMI 2006[AR]5 trust as a prerequisite to perfecting any interest or title to the Mortgages or Deeds of Trust." *Id*. ¶ 54.

"The MBS trust required that all loans being transferred to the trust had to be funded according to the terms of the pooling and servicing agreement [("PSA")] ... by the Cutoff Date which was designated to occur on May 1, 2006 with a Closing Date of May 31, 2006..." *Id*. ¶ 84. "However, the loans by American Broker Conduit, such as [P]laintiff's loan, were not properly transferred into the trust by the Closing Date or the Cut Off Date." *Id*. ¶ 85. "The four corners of the PSA bind the trust to the only actions which can lawfully be taken with respect to the administration of its assets." *Id*. ¶ 86.

"The Free Writing Prospectus of this MBS trust filed with the SEC on May 26, 2006 designated [D]efendant[] JP Morgan [] as the trustee." *Id*. ¶ 87. "Defendant BONY was not made a successor trustee of the MBS trust as set forth in the [PSA].... Yet, [D]efendant BONY took title to [P]laintiff's property by way of a Trustee's Deed Upon Sale ("TDUS") on April 9, 2012 claiming it was the beneficiary entitled to a credit bit as the trustee of the SAMI 2006-AR5 trust." *Id*. ¶ 90. "BONY did not initiate the nonjudicial foreclosure.   JP Morgan [] initiated the nonjudicial foreclosure representing that it was the beneficiary as the trustee of the SAMI 2006-AR5 trust." *Id*. ¶ 91. "AHMSI continued to use BONY's underwriting standards when evaluating plaintiff for a loan modification which failed and plaintiff's home was taken at foreclosure auction on April 9, 2012." *Id*. ¶¶ 27-28.

**MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 20)**

## I.        STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Depot*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## II.       DISCUSSION

### A.        Negligence

Plaintiff's first cause of action alleges negligence against all Defendants. Plaintiff alleges that Defendants JP Morgan and/or BONY "owed [Plaintiff] a duty of

due care pursuant to 15 U.S.C. § 1641(g)[1] to ensure that it gave notice within 30 days of a borrower's loan being transferred or assigned to a new "creditor" or "assignee" as defined in the statute." (ECF No. 55 at 23-24).  Plaintiff alleges that AHMSI was acting as Defendant BONY's agent.  Plaintiff alleges that "Defendants AHMSI, JP Morgan, [and] BONY,... wrongfully denied Plaintiff a loan modification which resulted in Plaintiff losing his home to foreclosure." (ECF No. 55 at 28).  Plaintiff alleges that he "was attempting to obtain, and was qualified to receive, a loan modification," but "Plaintiff's loan applications were being denied on 'missing paperwork.'" (ECF No. 55 at 24).  Plaintiff further alleges that "AHMSI failed to properly review Plaintiff for a loan modification," and "erroneously continued to use BONY's underwriting standards when reviewing Plaintiff's loan for a modification." (ECF No. 55 at 27, 28-29).  Plaintiff alleges that "[f]oreclosure, accumulated interest and fees, and the loss of opportunity to save the home by other means was substantially certain to occur upon an erroneous denial of a modification request, erroneous/illusory modification offer and/or delayed modification notice." (ECF No. 55 at 25-26).

Defendants contend that California courts have long held that there is no fiduciary duty or duty of care owed to a borrower where an institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.  (ECF No. 56-1 at 12).  Defendants contend that Plaintiff has not alleged any special circumstances that would impose a duty of care on Defendants.  *Id.* at 13.

Plaintiff contends that the factual allegations of the Second Amended Complaint support a duty of care against the servicer, AHMSI, because a delay or wrongful denial

---

[1]  15 U.S.C. § 1641g provides in part: "...not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including – (A) the identity, address, telephone of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor." 15 U.S.C. § 1641(g)

in the loan modification process can result in unnecessary foreclosure making the harm to the homeowner foreseeable.  (ECF No. 75 at 10).

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th  269, 278 (2004).  "[F]or purposes of a negligence claim, 'as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 740 (2010) (quoting *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991)); *see also Wagner v. Benson*, 101 Cal. App. 3d 27, 34-35 (1980).  Absent "special circumstances ... a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006).  Likewise, a loan servicer generally does not owe a duty to the borrower of the loan it is servicing. *See Castaneda v. Saxon Mortg. Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009).  Absent special circumstances, there is no duty for a servicer to modify a loan. *See Bunce v. Ocwen Loan Servicing, LLC*, No. 13-00976, 2013 WL 3773950, at *5-*6 (E.D. Cal. July 17, 2013) (collecting cases); *Gonzalez v. Wells Fargo Bank*, No. 12cv3842, 2012 WL 5350035 *6 (N.D. Cal. Oct. 29, 2012) ("A loan modification, which is nothing more than a renegotiation of loan terms, falls well within a[n] institution's conventional money-lending role.") (citations omitted).

"However, even when the lender is acting as a conventional lender, the no-duty rule is only a general rule." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014) (internal citations omitted).  In California, the test for determining whether a financial institution owes a duty of care to a borrower-client involves the

balancing of various factors, referred to as the *Biakanja* factors, "'among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.'" *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1098 (Cal. Ct. App. 1991) (citing *Connor v. Great Western Sav. & Loan Assn.*, (1968) 69 Cal.2d 850, 865 (quoting *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650).

Plaintiff relies upon *Alvarez v. BAC Home Loans, Servicing, L.P.*, 228 Cal. App. 4th 941 (2014) which held that mortgage lenders had a duty to a borrower with respect to servicing loans and applications for loan modifications.  In *Alvarez*, the court stated:

> Here, because defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors clearly weigh in favor of a duty. The transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants. Plaintiffs allege that the mishandling of their applications "caus[ed] them to lose title to their home, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages." As stated in *Garcia*, "Although there was no guarantee the modification would be granted had the loan been properly processed, the *mishandling* of the documents deprived Plaintiff of the possibility of obtaining the requested relief."

*Alvarez*, 228 Cal. App. 4th 941, 948-49 (quoting *Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098 *3 (N.D. Cal. May 10, 2010)) (emphasis added).

In *Alvarez* and *Garcia*, the plaintiffs alleged specific mishandling of plaintiffs' documents by defendants and the courts relied on the mishandling of plaintiffs' documents to find that the *Biankaja* factors weighed in favor of finding that a duty existed.  *See Alvarez*, 228 Cal. App. 4th 941 at 945 ("The lenders allegedly breached this duty by ... mishandling plaintiffs' applications by relying on incorrect information ... Alvarez was told ... that his application for modification ... had been rejected because his monthly gross income of $2,554.75 was inadequate, whereas his paystubs showed

that his monthly gross income was $6,075.  With respect to the loan on one of his rental properties, he was told that his application showed a $6,318.98 deficit in monthly income, while Alvarez alleges there was no such deficit.  With respect to the loan on his second rental property, the complaint alleges that defendants falsely advised him that no documents had been submitted for review when in fact documents were sent to and received by defendants."); *Garcia*, 2010 WL 1881098 at *1 ("Upon receipt of the requested documents ... Defendant routed the documents to the wrong department. Instead of routing the documents to its Home Retention Department, Defendant's employee routed them to its Short Sale Department.").

In this case, the Court finds that Plaintiff's factual allegations are not sufficient to conclude that Defendants agreed to consider Plaintiff's loan modification creating a duty of care.  Plaintiff's Complaint alleges his "loan applications were being denied on 'missing paperwork;'" "AHMSI kept giving the excuse that they needed more papers or papers were missing;" "[t]he mortgage servicer failed to properly review plaintiff for a loan modification;" "Defendants ... each exerted ownership or control over Plaintiff's loan and then wrongfully denied Plaintiff a loan modification;" and "AHMSI erroneously continued to use BONY's underwriting standard when reviewing Plaintiff's loan for a modification."  (ECF No. 55 at 24-25, 27, 28-29).  Unlike *Alvarez* and *Garcia*, Plaintiff's allegations in the Second Amended Complaint do not allege specific mishandling of Plaintiff's documents after an agreement to consider Plaintiff's modification application.  Plaintiff's second amended complaint makes general allegations that his loan applications were denied due to "missing paperwork," which do not weigh in favor of a duty.  Furthermore, the facts alleged by Plaintiff do not support a finding that Defendants owed a duty pursuant to 15 U.S.C. § 1641(g).  The motion to dismiss the first cause of action for negligence is granted.

**B.    RESPA**

Plaintiff's Second Cause of Action alleges violation of 12 U.S.C. § 2605 against Defendant AHMSI.  Plaintiff first alleges that "[h]is attorney drafted a Qualified

Written Request ("QWR") in order to identify the master servicer, current creditor and amount of debt currently owed on the loan."  (ECF No. 55 at 29).  Plaintiff further alleges that "AHMSI violated 12 U.S.C. [section] 2605 by failing to inform [P]laintiff of the bankruptcy or how it could potentially affect [P]laintiff, perform any diligence in determining the identity of [P]laintiff's creditor and furnishing that information to the [P]laintiff."  *Id*. at 30.  Plaintiff alleges that "[i]f AHMSI had properly conducted an investigation with any diligence in determining the true identity of the creditor (or did not intentionally conceal it or the bankruptcy), AHMSI would have realized that the trustee for the MBS trust it stated in the response to the QWR was JP Morgan, not BONY..."  *Id*.  Plaintiff alleges that "[a]s a direct and proximate result of AHMSI's actions and/or failure to act ... [P]laintiff incurred costs in attempting to identify the correct creditor, he was unable to negotiate a loan modification, or to file a claim with the US Bankruptcy [C]ourt..., offer a bid on his own loan..., dispute the default related expenses due to the Plan in the Delaware [B]ankruptcy [C]ourt, or even request the disclosure of which loans identified by loan number AHMSI was retaining, BONY [], Wells Fargo, and/or JP Morgan [] were attempting to buy."  *Id*. at 30-31.  Plaintiff alleges that "[a]s a further proximate cause, [P]laintiff incurred additional interest and default related expenses, further credit damage, lost opportunity to purchase his loan or erase the default related expenses, and lost his home to foreclosure."  *Id*. at 31.

Defendant contends that Plaintiff's RESPA claim must fail.  Defendant contends that Plaintiff's correspondence to AHMSI did not constitute a QWR because a request for information about who owns a loan or a vague inquiry into the application of payments that does not involve any alleged servicing errors does not constitute a valid QWR.  (ECF No. 56-1 at 13).  Defendants contend that the claim is defective because it fails to allege actual damage caused by the alleged failure to respond to the purported QWR.  (ECF No. 56-1 at 14).  Plaintiff contends that the correspondence to AHMSI did constitute a QWR.  (ECF No. 75 at 15-16).  Plaintiff contends that the facts alleged in the second amended complaint plausibly allege actual damages.  (ECF No. 75 at 15-16).

A QWR must request information relating to the servicing of a loan.  12 U.S.C. § 2605(e)(1)(A).  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making payments of principal and interest and such other payments with respect to the amount received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(e)(4)(J)(1).  "'Servicing,' so defined, does not include the transactions and circumstances surrounding a loan's origination – facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).  "Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Id*. at 667.

12 U.S.C. § 2605 specifies the contents of a proper QWR and the required response to a borrower's QWR.  12 U.S.C. § 2605 states:

> Not later than 30 days ... after the receipt from any borrower of any qualified written request ... the servicer shall...(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(C).  "RESPA, however, only obligates loan servicers to respond to borrowers' requests for information relating to the servicing of their loans..." *Van Egmond v. Wells Fargo Home Mortgage*, 2012 WL 1033281, at *4 (C.D. Cal. March 21, 2012) (finding that Defendant provided a complete response to all of Plaintiff's inquiries that did relate to the servicing of his loan).  If a loan servicer fails to comply with the provisions of 12 U.S.C. section 2605, a borrower is entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [12 U.S.C. section 2605]."  12 U.S.C. § 2605(f)(1).

"Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim." *Marquette v. Bank of Am., N.A.*, No. 13CV2719-WQH-JMA,

2014 WL 3773559, at *4 (S.D. Cal. July 30, 2014) (citing *Molina v. Wash. Mut. Bank*, No. 09-CV-894, 2010 WL 431439 at *7 (S.D. Cal. Jan. 29, 2010)).  "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm." *Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 2:09-1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted).  A plaintiff is entitled to recover for the loss that relates to the RESPA violation, not for all losses related to foreclosure activity. *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[T]he loss alleged must be related to the RESPA violation itself."); *Torres v. Wells Fargo Home Mortg., Inc.*, No. 10-4761, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011) ("The plaintiff must ... allege a causal relationship between the alleged damages and the RESPA violation."); *cf. Lawther v. OneWest Bank*, No. C-10-54, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010) (granting motion to dismiss RESPA claim for failure to adequately allege actual damages because "[w]hat remains unexplained ... is how the QWR failure itself is causally connected to the claimed distress of Lawther or his family").

In this case, Plaintiff's request for the identity of the master servicer and current creditor constitutes non-servicing related information because the identity of the master servicer and current creditor are facts relevant to a challenge of validity of an underlying debt or the terms of a loan agreement and not to the servicing of the loan. *See Lopez v. JP Morgan Chase Bank, Nat. Ass'n*, 2012 WL 2953065, at *9 (E.D. Cal. July 19, 2012) ("Plaintiff's allegations concern the ownership and validity of the loan. However, the QWR provision of RESPA relates only to the servicing of the loan."); *Tamburri v. Suntrust Mortgage, Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012) ("Any damages-whether monetary or emotional-purportedly resulting from Plaintiff's lack of knowledge as to the owner of her loan are not plausibly related to her RESPA claim, because § 2605 relates only to the servicing of a loan, not to its ownership or validity.").

However, Plaintiff requested servicing related information, the amount of debt currently owed on the loan.  The Court finds that Plaintiffs letter constitutes a QWR. *See Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D. CA. 2013) (holding that a letter containing both servicing related requests and non-servicing related request constituted a QWR.); *Rey v. OneWest Bank, FSB*, 2013 WL 1791910, *3 (E.D. Cal. Apr. 25, 2013) (holding that the letter constituted a QWR when the letter sought servicing related and non-servicing related information).

Plaintiff alleges that he suffered actual damages.  Plaintiff alleges "[i]f AHMSI had properly conducted an investigation with any diligence in determining the true identity of the creditor (or did not intentionally conceal it or the bankruptcy), AHMSI would have realized that the trustee for the MBS trust it stated in the response to the QWR was JP Morgan, not BONY..." (ECF No. 55 at 30).  "RESPA, however, only obligates loan servicers to respond to borrowers' requests for information relating to the servicing of their loans..." *Van Egmond v. Wells Fargo Home Mortgage*, 2012 WL 1033281, at *4 (C.D. Cal. March 21, 2012) (finding that Defendant provided a complete response to all of Plaintiff's inquiries that did relate to the servicing of his loan).  The identity of the current creditor constitutes non-servicing related information and, therefore, any alleged failure to provide the identity of the true creditor does not constitute a RESPA violation.  *See Lopez v. JP Morgan Chase Bank, Nat. Ass'n*, 2012 WL 2953065, at *9 (E.D. Cal. July 19, 2012) ("Plaintiff's allegations concern the ownership and validity of the loan.  However, the QWR provision of RESPA relates only to the servicing of the loan."); *Tamburri v. Suntrust Mortgage, Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012) ("Any damages-whether monetary or emotional-purportedly resulting from Plaintiff's lack of knowledge as to the owner of her loan are not plausibly related to her RESPA claim, because § 2605 relates only to the servicing of a loan, not to its ownership or validity.").  The Court finds that Plaintiff fails to allege facts plausibly suggestive of a casual connection between the alleged failure to diligently determine the identity of Plaintiff's creditor and the alleged

1   damages because any failure to identify Plaintiff's creditor is not a RESPA violation.

2   The Second Amended Complaint also fails to allege "a pattern of practice of

3   noncompliance with the requirements of [12 U.S.C. section 2605]."  12 U.S.C. §

4   2605(f)(1) (allowing "any additional damages, as the court may allow, in the case of a

5   pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605]").

6   The Court concludes that Plaintiff has not alleged sufficient facts to support a cause of

7   action for violation of RESPA.  *See Twombly*, 550 U.S. at 555.

8   The Motion to Dismiss the second cause of action for violation of RESPA is

9   granted.

10   **C.     TILA**

11   Plaintiff's third cause of action alleges violation of the Truth In Lending Act

12   ("TILA") against Defendants JP Morgan and BONY.  Plantiff alleges that "[a]fter May

13   20, 2009, JP Morgan and BONY were required to notify the plaintiff in writing of the

14   transfer of the loan from lender to new creditor or assignees pursuant to 15 U.S.C.

15   [section] 1641."  (ECF No. 55 at 31).  Plaintiff alleges that "[b]oth JP Morgan and

16   BONY failed to notify [P]laintiff and those similarly situated within 30 days of the

17   purported assignment or transfer of [P]laintiff's loan when it believed it became the new

18   creditor or assignee after May 20, 2009 and failed to give proper notice as described in

19   15 U.S.C. [section] 1641g."  *Id*. at 32.

20   Defendants contend that the TILA claim fails because Plaintiff does not allege

21   that "JP Morgan or BONY were ever the new owners or assignees of his loan," and it

22   would be "incongruous to claim that they were required to provide notice of an

23   assignment that allegedly never occurred."  (ECF No. 56-1 at 15).  Defendants further

24   contend that the claim is barred by the one-year statute of limitations.  (ECF No. 56-1

25   at 14-15).

26   TILA provides that, "not later than 30 days after the date on which a mortgage

27   loan is sold or otherwise transferred or assigned to a third party, the creditor that is the

28   new owner or assignee of the debt shall notify the borrower in writing of such transfer,

including (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor." 15 U.S.C. § 1641(g). A creditor that fails to comply with any requirement imposed under 15 U.S.C. section 1641g faces liability "in an amount equal to the sum of—" "any actual damage sustained by such a person as a result of the failure," and "in the case of an individual action twice the amount of any finance charge in connection with the transaction," and "in the case of a class action, such amount as the court may allow...." 15 U.S.C. § 1640(a)(1)-(2). The TILA statute of limitations provision states that "any action under this section may be brought ... within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

The Complaint was filed on July 25, 2012. (ECF No.1-2). The Second Amended Complaint alleges that "Defendant Power Default represented JP Morgan was the creditor/assignee in the Notice of Default recorded on June 15, 2011.... Defendant Power Default also represented BONY was plaintiff's creditor/assignee in the Trustee's Deed Upon Sale on April 13, 2012.... Defendant Power Default was acting as Defendant BONY and Defendant JP Morgan's authorized agent at the time each of these representations were made." (ECF No. 55 ¶¶ 138-40). Viewing reasonable inferences in Plaintiff's favor, *see Moss*, 572 F.3d at 969, these allegations are sufficient to establish that Defendant JP Morgan and Defendant BONY were assignees and were required to provide notice pursuant to 15 U.S.C. section 1641g "not later than 30 days after the date on which a mortgage loan is ... assigned." 15 U.S.C. § 1640(e). Plaintiff alleges he discovered that Defendant JP Morgan was the assignee on June 15, 2011 which is outside of the one-year statute of limitations provided by 15 U.S.C. section 1641(e). Plaintiff alleges he discovered that Defendant BONY was the assignee on April 13, 2012, which is well within the one-year statute of limitations period.

The Court does not decide whether the Second Amended Complaint adequately

pleads actual damages, because Plaintiff adequately pleads entitlement to statutory damages pursuant to 15 U.S.C. § 1640(a) (providing that damages are recoverable "in the case of an individual action twice the amount of any finance charge in connection with the transaction," and "in the case of a class action, such amount as the court may allow...."). *See Vogan v. Wells Fargo Bank, N.A.*, No. 11cv2098, 2011 WL 5826016, at *5 (E.D. Cal. Nov. 17, 2011) ("Even if plaintiffs are not entitled to actual damages based on the allegations in their Complaint [for violation of 15 U.S.C. section 1641g], they did adequately plead that they are entitled to attorneys' fees and statutory damages."); *cf. Gutierrez v. U.S. Bank, NA*, No. CV-12-4713, 2013 WL 399140, at *3 n.3 (C.D. Cal. Feb. 1, 2013) (requiring plausible allegations of actual damages because plaintiff "fails to identify any statutory damages to which she would be entitled" and "the statutory damages provision at 16 U.S.C. § 1640(a)(2)(A) does not apply in the circumstances of this case").

The Motion to Dismiss the third cause of action for violation of TILA is granted as to Defendant JP Morgan and denied as to Defendant BONY.

### D.    Cancellation of Documents

In the fourth cause of action for "cancellation of documents," Plaintiff alleges that the "actions by JP Morgan Chase Bank and BONY purporting that either had standing as trustee of the MBS trust to foreclose or assign this mortgage loan to the [t]rust in 2012 were in contravention of the trust and was [sic] void." (ECF No. 55 at 40).  Plaintiff alleges that "[a]ll land records, including but not limited to the Notice of Default ("NOD"), Notice of Sale ("NOS"), TDUS and Substitution of Trustee ("SOT") are fraudulent and fabricated in that each were [sic] recorded on behalf of the MBS trust that initiated this fraudulent foreclosure when the MBS trust was not beneficiary." (ECF No. 55 at 41).  Plaintiff alleges that there is "a reasonable apprehension that unless the [f]raudulent NOD, TDUS, NOS and SOT are cancelled, it will damage plaintiff in that the documents purport to deprive plaintiff of his interest in the property" and "pursuant to Civil Code § 3412, Plaintiff is entitled to an order cancelling the fraudulent

1   documents and compelling delivery of the original documents to plaintiff." (ECF No.

2   55 at 42).

3       Defendants contend that Plaintiff's challenge to the foreclosing entities' standing

4   to foreclose is precluded as a matter of law. (ECF No. 56-1 at 16). Defendants contend

5   that Plaintiff cannot predicate a viable claim on an alleged violation of the trust's

6   pooling service agreement because a borrower lacks standing to enforce any

7   agreements, including the investment trust's pooling and servicing agreement, relating

8   to such transactions. (ECF No. 56-1 at 17). Defendants contend that even if Plaintiff

9   had standing to challenge the relevant alleged assignments, Plaintiff does not allege

10  facts from which it could be concluded that the foreclosing entities did not receive an

11  assignment of the debt in any manner. (ECF No. 56-1 at 21). Defendants further

12  contend that to obtain equitable relief a debtor must allege tender or offer of tender of

13  the amounts admittedly borrowed and Plaintiff has admittedly failed to pay the amounts

14  due on the loan, and does not allege an ability or willingness to tender.[2] (ECF No. 56-1

15  at 22).

16      Plaintiff contends that Defendants were not authorized to initiate a nonjudicial

17  foreclosure because the substitution of trustee document was fraudulent. Plaintiff

18  asserts a nonjudicial foreclosure sale based on a fraudulent substitution of trustee

19  document is void. (ECF No. 75 at 18-19). Plaintiff cites *Glaski v. Bank of America,*

20  *N.A.*, 218 Cal. App. 4th 1079 (2013) to support his contention that Plaintiff can state a

21  wrongful foreclosure claim if the defendants were not proper parties to foreclosure in

22  the first place due to allegedly fraudulent assignments prior to the foreclosure sale.

23  (ECF No. 75 at 19-20). Plaintiff further contends that Defendants' interpretation of the

24  law violates Plaintiff's civil rights. (ECF No. 75 at 24). Plaintiff contends that allowing

25  a nonjudicial foreclosure and cutting off the homeowners' right to challenge the legality

26  is unconstitutional resulting in a deprivation of property. (ECF No. 75 at 24). Plaintiff

27  _____

28      [2]  The Court does not address Defendants' contentions that Plaintiff does not allege the ability or willingness to tender because the cause of action is dismissed on other grounds.

1   further contends that no tender applies because the sale was void.  (ECF No. 75 at 20).

2       In dismissing Plaintiff's "Cancellation of Documents" claim in Plaintiff's FAC,

3   the Court stated:

> California's nonjudicial foreclosure scheme does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized." *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1155 (2011) ("The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."). "[D]istrict courts have held that borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity because they had not alleged a concrete and particularized injury that is fairly traceable to the challenged assignment." *Marques v. Fed. Home Loan Mortg. Corp.*, No. 12-cv-1873, 2012 WL 6091412, at *4 (S.D. Cal. Dec. 6, 2012) (citations omitted); *see id.* at *5 ("[T]he validity of the assignment does not affect whether [the] borrower owes its obligations, but only to whom [the] borrower is obliged.") (quotation omitted).  "To the extent [a] Plaintiff bases her claims on the theory that [Defendant] allegedly failed to comply with the terms of the [pooling and servicing agreement], the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement." *McLaughlin v. Wells Fargo Bank, N.A.*, No. 12-1114, 2012 WL 5994924, at *6 (C.D. Cal. Nov. 30, 2012) (citing *Sami v. Wells Fargo Bank*, No. 12-108, 2012 WL 967051, at *5 (N.D. Cal. Mar. 21, 2012)); *see also Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 514-15 (2013) ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions. Furthermore, even if any subsequent transfers of the promissory note were invalid, [plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged.") (citations omitted); *cf. Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (1976) ("A third party should not be permitted to enforce covenants made not for his benefit, but rather for others.... As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler.").
>
> Plaintiff relies upon *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013).  (ECF No. 25). In *Glaski*, the California Court of Appeal held that, under New York trust law, a transfer of a deed of trust in contravention of the trust documents is "void, not merely voidable," and, under California law, "a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment." *Id.* at 461 (citation omitted). This Court finds the reasoning in the above-cited caselaw to be more persuasive than that in *Glaski*. *See Deutsche Bank Nat'l Trust Co. v. Adolfo*, No. 12 C 759, 2013 WL 4552407, at *3 (N.D. Ill. Aug. 28, 2013) ("[W]e are persuaded by the courts that have held that a transfer that does not comply with a PSA is voidable, not void.") (expressly disagreeing with *Glaski*) (citations omitted).  Moreover, even if *Glaski* was correctly decided, California

1
2
3
4
5
6
7
8
9
10
11

courts have held that in order to state a claim challenging a foreclosure sale, "it [is] not enough for plaintiff to allege that [the] purported assignment of the note in the assignment of deed of trust was ineffective. Instead, plaintiff [is] required to allege that [defendant] did not receive a valid assignment of the debt *in any manner*." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 271-72 (2011); *see also Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1506 (2012) (same). And even if *Glaski* were correctly decided, and Plaintiff alleged that the foreclosing Defendant did not receive a valid assignment of the debt in any manner, the California Court of Appeal has held that plaintiffs must "allege ... facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process." *Siliga v. Mortg. Elec. Reg. Sys., Inc.*, --- Cal. Rptr. 3d ----, 2013 WL 4522474, at *5 (Cal. Ct. App. Aug. 27, 2013) ("The Siligas do not dispute that they are in default under the note. The assignment of the deed of trust and the note did not change the Siligas' obligations under the note, and there is no reason to believe that Accredited as the original lender would have refrained from foreclosure in these circumstances. Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment.").

(ECF No. 29 at 12-14).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Second Amended Complaint does allege that "BONY [] did not receive a valid assignment of the debt in any manner..." (ECF No. 55 at 41). Plaintiff's Second Amended Complaint alleges that "[a]ll land records, including but not limited to the NOD, NOS, TDUS and SOT are fraudulent and fabricated in that each were recorded on behalf of the MBS trust that initiated this fraudulent foreclosure when the MBS trust was not the beneficiary." (ECF No. 55 at 41). The Court finds that Plaintiff fails to adequately allege facts to show that BONY did not receive a valid assignment of the debt in any manner because Plaintiff relies solely on allegations that the NOD, NOS, and SOT are fraudulent and fabricated to establish that BONY did not have the authority to foreclose. These allegations are insufficient because assignments of debt are commonly not recorded. *See Fontenot*, 198 Cal. App. 4th at 271-72 (finding Plaintiff's argument that the nonjudicial foreclosure sale was invalid because HSBC lacked authority to foreclose, never having received a proper assignment of the debt, was insufficient because Plaintiff rested her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded); *Herrera*, 205 Cal. App. 4th at 1506 (holding that Plaintiffs failed affirmatively to plead specific facts demonstrating the sale

was invalid because the assignment of debt is commonly not recorded and the note could have been assigned to OneWest and Fannie Mae, who then would have had the authority to foreclose, regardless of MERS's assignment of the DOT).

The California Court of Appeal has held that plaintiffs must "allege ... facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process." *Siliga v. Mortg. Elec. Reg. Sys., Inc.*, --- Cal. Rptr. 3d ----, 2013 WL 4522474, at *5 (Cal. Ct. App. Aug. 27, 2013) ("The Siligas do not dispute that they are in default under the note.  The assignment of the deed of trust and the note did not change the Siligas' obligations under the note, and there is no reason to believe that Accredited as the original lender would have refrained from foreclosure in these circumstances.  Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment.").  In this case, the Second Amended Complaint does not allege that Plaintiff was current on his mortgage obligations, or that the loan modification offer would have been materially different had a different company's underwriting standards been used.  Plaintiff's Second Amended Complaint alleges that "more than one entity concurrently attempted to collect mortgage payments from [P]laintiff and/or foreclose on his property." (ECF No. 55 at 42).  The Second Amended Complaint alleges no facts to support the conclusion that more than one entity concurrently attempted to collect mortgage payments from Plaintiff or foreclose on his property.  Plaintiff's Second Amended Complaint alleges that "BONY did not initiate the nonjudicial foreclosure.  JP Morgan [] initiated the nonjudicial foreclosure representing it was the beneficiary as the trustee of the SAMI 2006-AR5 trust." (ECF No. 55 at 19).  The Second Amended Complaint fails to adequately allege that Plaintiff suffered prejudice from the allegedly invalid assignments.  The Motion to Dismiss the fourth cause of action for cancellation of documents is granted because Plaintiff lacks standing and fails to adequately allege prejudice.

**E.     Fraud**

### 1.     Allegations Supporting the Claim for Fraud

Plaintiff alleges four misrepresentations.  First, Plaintiff alleges that an "AHMSI representative ... told plaintiff he could obtain a fixed rate loan with payments similar to the monthly payment he was now making at $1,752.06 per month ... if he sent in an additional $31, 752.06 to pay towards his principal ... on or about November 7, 2007." (ECF No. 55 ¶ 249).  Plaintiff alleges that he withdrew $30,000 from his IRA account and sent AHMSI an additional $31,752.06 ... in reliance on the statements made ... by AHMSI."  *Id*. ¶ 251.  Plaintiff alleges that "this representation was false, and was known to be false when made."  *Id*. ¶ 252.

Second, Plaintiff alleges that he "called AHMSI ... on or about August 7, 2008 and asked for a modification of his loan."  *Id*. ¶ 259.  Plaintiff alleges that "AHMSI's employee ... told Plaintiff that he appeared to qualify for a modification which would lower his monthly mortgage payment back to approximately $1,752.06 ... but he had to first default on three of his monthly mortgage payments before AHMSI would consider him for a modification...."  *Id*. ¶ 260.  Plaintiff alleges that he "stopped making his payments." "Submitted paperwork," and, on April 1, 2010, AHMSI sent Plaintiff an offer to modify his loan that 'was worse than [Plaintiff's] regular monthly terms."  *Id*. ¶ 261-65.

Third, Plaintiff alleges that "AHMSI employee, Cindy Ellis ... misrepresented that BONY was the creditor of [P]laintiff's loan ... in response to [P]laintiff's QWR," and that "AHMSI concealed the fact that AHMSI and American Brokers Conduit parent entities, American Home Mortgage Interest Corp. and American Home Mortgage Corp., had filed for Chapter 11 bankruptcy in Delaware on August 6, 2007 where the performing loans at the time, including Plaintiff's loan became a contested asset."  *Id*. ¶¶ 275, 278.  "Defendant AHMSI knew of the bankruptcy and concealed this material fact from the borrower intending [P]laintiff and the borrower to continue sending their monthly mortgage payments to AHMSI."  *Id*. ¶ 279.  "If [P]laintiff had known the truth, [P]laintiff could have filed a claim with the US Bankruptcy Court in Delaware, staked

a claim to his loan, demanded an accounting and even bid on his loan or had monies set aside from the estate to pay off his loan or which would have led to a loan modification, thus preserving his homeownership, eliminating default related charges, escalating interest, and further credit damage." *Id*. ¶ 282.

Fourth, Plaintiff alleges that the February 14, 2012 statement was false. Plaintiff alleges that he sent a letter to an AHMSI representative on January 6, 2012, and "AHMSI responded by way of letter on February 14, 2012 stating his loan modification was being reviewed (impliedly by JP Morgan). There was no mention that any documents were missing." *Id*. ¶ 291. "The February 14, 2012 statement was false. JP Morgan objected to AHMSI's refusal to transfer the loans to BONY in the bankruptcy proceeding. AHMSI knew that it refused to transfer the loans, including [P]laintiff's loan, to BONY after it went into bankruptcy because they were performing loans." *Id*. ¶ 292. Plaintiff's property was sold at foreclosure auction on April 9, 2012. *Id*. ¶ 294.

## 2.    Analysis

Defendants contend that Plaintiff's claim is not pled with the requisite specificity required for fraud claims under Rule 9(b). Defendants contend that Plaintiff's allegations do not meet the heightened particularity standard because Plaintiff alleges that unidentified Homeward (formerly known as AHMSI, ECF No. 55 ¶ 44) employees informed him that he would need to make additional principal payments to receive a loan modification, or alternatively, to default on his loan obligations to receive a loan modification. Defendants contend that Plaintiff never identifies the time, place, and nature of the alleged fraudulent statements by Homeward, nor does Plaintiff identify who made the supposedly false statements. Defendants contend that Plaintiff does not allege the manner in which these statements were false. Defendants contend that according to the Second Amended Complaint, Plaintiff alleges that he was ultimately offered a loan modification, but that Plaintiff simply did not like the proposed terms. Defendants contend that Plaintiff alleges no damages resulting from the alleged misstatements, nor could he, given Plaintiff's allegation that he was actually offered a

loan modification.  Defendants further contend that Plaintiff's fraud claim is barred by the three-year statute of limitations because Plaintiff's claim is based upon misrepresentations which were allegedly made in 2007 and 2008.

Plaintiff contends that he did not need to allege the particular employee that committed fraud "because it was uniquely within [the] Bank's knowledge."  (ECF No. 75 at 25) (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d at 217).  Plaintiff contends that he adequately alleged the falsity of the statements, concealment of the bankruptcy proceeding, and justifiable reliance.  (ECF No. 75 at 25).  Plaintiff contends that he "then added the bridge to the damages and reliance," including but not limited to:

> AHMSI concealed the material fact that AHMSI and American Brokers Conduit parent entities, American Home Mortgage Interest Corp., and American Home Mortgage Corp., had filed for Chapter 11 bankruptcy in Delaware on August 6, 2007 where the performing loans at the time, including Plaintiff's loan, became a contested asset.  JP Morgan Chase and other banks along with AHMSI itself were filing competing claims and bids on [P]laintiff's and the class members loans.

> Because the first representation came from AHMSI, his servicer, on AHMSI letterhead, [P]laintiff justifiably relied on the representations as being true and made no further investigation or inquiry.

> If [P]laintiff had known the truth, [P]laintiff could have filed a claim with the US Bankruptcy Court in Delaware, staked a claim to his loan, demanded an accounting and even bid on his loan or had monies set aside from the estate to pay off his loan or which would have led to a loan modification, thus preserving his homeownership, eliminating default related charges, escalating interest, and further credit damage.

*Id*. at 25-26.

The elements of a claim for fraud are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages."  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (citing *Small v. Fritz Cos., Inc*., 30 Cal. 4th 167, 173 (2003)).  "It is well-established in the Ninth Circuit that ... claims for fraud ... must meet Rule 9(b)'s particularity requirement."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103

1   (9th Cir. 2003) ("Rule 9(b)'s particularity requirement applies to state-law causes of

2   action."). Pursuant to Federal Rule of Civil Procedure 9(b), a party alleging fraud must

3   satisfy a heightened pleading standard by stating with particularity the circumstances

4   constituting fraud. *See* Fed. R. Civ. P. 9(b). "Rule 9(b) demands that, when averments

5   of fraud are made, the circumstances constituting the alleged fraud be specific enough

6   to give defendants notice of the particular misconduct so that they can defend against

7   the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at

8   1106 (quotations omitted). "Averments of fraud must be accompanied by 'the who,

9   what, when, where and how' of the misconduct charged." *Id.* (quoting *Cooper v.*

10  *Pickett,* 137 F.3d 616, 627 (9th Cir. 1994)).

11         Claims of fraud must be filed within three years of the discovery by the aggrieved

12  party "of the facts constituting the fraud."   *See* Cal. Code Civ. P. § 338(d).   The

13  Complaint was filed on July 25, 2012.  (ECF No.1-2).  With respect to the allegedly

14  false representation made by an AHMSI representative in 2007, the Second Amended

15  Complaint alleges that, in 2007, "The AHMSI representative on the telephone, ... , told

16  Plaintiff he could obtain a fixed rate loan with payments similar to the monthly payment

17  he was now making at $1,752.06 per month ... if he sent in an  additional $31,752.06

18  to pay towards his principal..."  (ECF No. 55 ¶ 249).  However, based upon the

19  allegations of the Second Amended Complaint, it is not plausible that Plaintiff failed

20  to discover the "facts constituting the fraud" concerning the alleged 2007 false

21  representation prior to July 25, 2009 (i.e., three years prior to the filing of the

22  Complaint).  Plaintiff specifically alleges that he called AHMSI on or about August 7,

23  2008 asking for the same modification. *See* ECF No. 55 ¶ 259-60 ("Plaintiff called

24  AHMSI ... on or about August 7, 2008 and asked for a modification of his loan," and

25  the "AHMSI employee told [P]laintiff that he appeared to qualify for a modification

26  which would lower his monthly mortgage payment back to approximately $1,752.06..."

27  *Id*. ¶ 259-60. To the extent the claim for fraud is based upon the alleged 2007 false

28  representation, the Court finds that the claim is barred by the applicable statute of

limitations.

With respect to the alleged misrepresentation made by the unidentified AHMSI employee on August 7, 2008, Plaintiff alleges that "AHMSI's employee ... told Plaintiff that he appeared to qualify for a modification which would lower his monthly mortgage payment back to approximately $1,752.06 ... but he had to first default on three of his monthly mortgage payments before AHMSI would consider him for a modification...." *Id*. ¶ 260.  Plaintiff fails to allege facts to show that this representation was false. Plaintiff alleges that "on April 1, 2010, AHMSI sent Plaintiff an offer to modify his loan that 'was worse than [Plaintiff's] regular monthly terms.'"  *Id*. ¶ 261-65.  To the extent that Plaintiff alleges that the unidentified AHMSI employee represented that a modification would lower his monthly mortgage payment back to approximately $1,752.06, Plaintiff fails to allege that the AHMSI employee knew that the misrepresentation was false, or that the misrepresentation was made with the intent to induce Plaintiff's reliance.

With respect to the alleged representation in the January 11, 2011 QWR, Plaintiff first alleges that "Cindy Ellis ... misrepresented that BONY was the creditor of [P]laintiff's loan ... in response to [P]laintiff's QWR."  Plaintiff alleges that "[b]ecause [P]laintiff did not discover the fraud in 2011, relying on the representation that BONY was the trustee, a modification was being negotiated based on BONY's underwriting standards by the [P]laintiff with AHMSI."  Plaintiff fails to plausibly allege that the underwriting standards would have been materially different and would have resulted in a loan modification or that Plaintiff would have responded differently had AHMSI informed him that another entity was the trustee.  Plaintiff fails to adequately allege that he suffered damages as a result of the alleged misrepresentation.

Plaintiff next alleges that "AHMSI concealed the fact that AHMSI and American Brokers Conduit parent entities, American Home Mortgage Interest Corp. and American Home Mortgage Corp., had filed for Chapter 11 bankruptcy in Delaware on August 6, 2007 where the performing loans at the time, including Plaintiff's loan became a

contested asset." *Id.* ¶ 278.  Plaintiff further alleges that:

> If [P]laintiff had known the truth, [P]laintiff could have filed a claim with the U.S. Bankruptcy Court in Delaware, staked a claim to his loan, demanded an accounting and even bid on his loan or had monies set aside from the estate to pay off his loan or which would have led to a loan modification, thus preserving his homeownership, eliminating default related charges, escalating interest, and further credit damage.

(ECF No. 55 ¶ 282).  Plaintiff fails to allege facts to show that any concealment of the Chapter 11 bankruptcy states a claim for fraud.  Rule 2002 of the Bankruptcy Code covers notice.  *See* Fed. R. Bankr. P. 2002.  Rule 2002(a) that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail..."  Fed. R. Bankr. P. 2002(a). Plaintiff was not a creditor, trustee, or indenture trustee of the debtor, AHMSI.  There are no facts alleged to show that Plaintiff was entitled to notice of the Chapter 11 bankruptcy.

With respect to the alleged representation in the February 14, 2012 letter that Plaintiff's "loan modification was being reviewed (impliedly by JP Morgan)," *Id.* ¶ 291. Plaintiff fails to adequately allege facts to show that the February 14, 2012 statement was false.

The Motion to Dismiss the fifth cause of action for fraud is granted.

### F.     Unfair Competition Law

The sixth cause of action alleges that Defendants violated California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200.

Defendants contend that Plaintiff lacks standing to bring a UCL claim against Defendants, Plaintiff has not pled the violation of any law on which he could hinge his UCL claim, and that the UCL claim is otherwise inadequately pled.  (ECF No. 56-1 at 24-25).  Plaintiff contends that he has cured the First Amended Complaint by alleging the following in his First Amended Complaint:

> As a direct result and proximate result, plaintiff was prohibited from directly negotiating with his true lender, filing a claim in the U.S. Bankruptcy [C]ourt which could have led to a loan modification to sustain homeownership, elimination of default related charges or other fees, the ability to bid on his own loan, account for the funds he paid to AHMSI and

prevent credit damage.

The delay or wrongful denial in the loan modification process resulted in an unnecessary foreclosure.

The extended delay in the modification process resulted in added interest from falling further behind and unnecessary default-related fees, and made other means of resolving avoiding foreclosure more difficult.

The harm to the plaintiff/borrower's credit during the months of delay made it harder for the borrower to recover financially even after the mortgage was ultimately modified because the loan became more expensive.

Foreclosure, accumulated interest and fees, and the loss of opportunity to save the home by other means was substantially certain to occur to the plaintiff upon the erroneous denial of a modification request, erroneous/illusory modification offer which did not make the loan affordable and/or delayed modification notice.

(ECF No. 75 at 26-27).

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A plaintiff alleging a UCL claim must satisfy UCL standing requirements. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). Private standing under the UCL is limited to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839 (9th Cir. 2011). "This provision requires [plaintiff] to show that she has lost money or property sufficient to constitute an injury in fact under Article III of the Constitution, and also requires a causal connection between defendant's alleged UCL violation and her injury in fact." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010) (quotation omitted). Several courts have found that a plaintiff has not suffered an injury in fact when the loss suffered is a result of a plaintiff's default on the loan. *See, e.g.*, *Bernardi v. JPMorgan Chase Bank, N.A.*, No. 11-cv-4212, 2012 WL 2343679, at *5 (N.D. Cal. June 20, 2012); *Serna v. Bank of Am., N.A.*, No. 11-10598, 2012 WL 2030705, at *5 (C.D. Cal. June 4, 2012); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-1390, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011).

Plaintiff concedes that he was in default on his mortgage obligation. (ECF No.

21 at 20).  As discussed above with respect to the causes of action for violation of RESPA and cancellation of documents, the Second Amended Complaint fails to adequately allege facts that support the claim that he lost his property as a result of the alleged unlawful, unfair or fraudulent business acts or practices.  The Second Amended Complaint fails to adequately allege that Plaintiff has standing to assert a claim pursuant to the UCL.  *See, e.g.*, *Bernardi*, 2012 WL 2343679, at *5.  The Motion to Dismiss the sixth cause of action for violation of California Business and Professions Code § 17200 is granted.

### MOTION TO VACATE MOTION TO CERTIFY CLASS (ECF No. 65)

Defendants contend that good cause exists for an order vacating the hearing on Plaintiff's class certification motion, vacating the dates set forth in the Court's scheduling order of January 21, 2014, and setting further case management conference at which time a further scheduling order may issue.  (ECF No. 65-2 at 4).  Defendants contend that neither Homeward nor Power Default were parties to this action when the Court issued its Order setting Initial Dates on January 21, 2014 and could not possibly comply with the deadline to complete class based discovery in this matter because they were not named Defendants in the Second Amended Complaint until over two months after the deadline to complete class based discovery had passed.  *Id*. at 5.  Defendants contend that after the Court ruled on Defendants' motion to dismiss the First Amended Complaint, only Plaintiff's claim for alleged violations of 15 U.S.C. section 1641g remained and Plaintiff's Second Amended Complaint – filed June 6, 2014, almost two months after the discovery cut-off date of April 25, 2014 – included five additional causes of action.  *Id*. at 5-6.  Accordingly, Defendants contend that none of the Defendants could complete class based discovery concerning the five new causes of action asserted in the Plaintiff's Second Amended Complaint.  *Id*. at 5.

Defendants further contend that they filed a motion to dismiss the Second Amended Complaint on June 23, 2014 and the Court's ruling on the motion to dismiss may significantly alter the claims at issue in this litigation and may again affect which

1  Defendants remain parties to this action. *Id.*

2      Plaintiff's Motion to Certify Class states that:

3      Plaintiff will and hereby does move for an order certifying a class as
       follows:

4      ...
       b.  All (1) borrowers who received conflicting notifications from
5      defendant AHMSI, BONY or JP MORGAN of the identity of their
       investor, or creditor as required under 15 USC § 1641g after May 5, 2009.

6
       c. All (1) borrows who received conflicting notifications from defendant
7      AHMSI of the identity of their investor, or creditor as required under 12
       USC § 2605 within the past two years.

8

9  (ECF No. 57 at 2).

10      The Court's ruling on Defendants' motion to dismiss Second Amended

11  Complaint dismisses Plaintiff's second claim for violation of 12 U.S.C. § 2605. *See*

12  *supra.* Given the Court's ruling on Defendants' motion to dismiss Second Amended

13  Complaint, Defendants' motion to vacate motion to certify class is granted and

14  Plaintiff's Motion to Certify Class is denied.

15  **V.    CONCLUSION**

16      IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's Second

17  Amended Complaint (ECF No. 20) is GRANTED in part and DENIED in part.  The

18  Motion to Dismiss the third cause of action for violation of TILA is denied.  In all other

19  respects, the Motion to Dismiss is granted, and the remaining causes of action are

20  dismissed.  IT IS FURTHER ORDERED that Defendants' Motion to Vacate Motion

21  to Certify Class (ECF No. 65) is GRANTED and Plaintiff's Motion to Certify the Class

22  (ECF No. 57) is DENIED without prejudice to refile.

23  DATED:  January 21, 2015

24                              *William Q. Hayes*

25                              **WILLIAM Q. HAYES**
                                United States District Judge

26

27

28