1
2
3
4
5
6
7
8

9                **UNITED STATES DISTRICT COURT**

10               **SOUTHERN DISTRICT OF CALIFORNIA**

11   NIMAL SUSANTHA DIUNUGALA,                CASE NO. 12cv2106-WQH-
     an individual, on behalf of himself and  KSC
12   all others similarly situated,
                                              ORDER
13                              Plaintiff,

14        vs.

15   JP MORGAN CHASE BANK, N.A.;
     THE BANK OF NEW YORK
16   MELLON TRUST COMPANY, N.A;
     AMERICAN HOME MORTGAGE
17   SERVICING, INC.; POWER
     DEFAULT SERVICES, INC.; and
18   DOES 1 through 10, inclusive,

19                              Defendants.

20   HAYES, Judge:

21        The matter before the Court is the Motion to Dismiss Plaintiff's Third Amended

22   Complaint for Failure to State a Claim (ECF No. 95-1) filed by Defendants American

23   Home Mortgage Servicing, Inc. ("AHMSI"), JP Morgan Chase Bank, N.A. ("JP

24   Morgan"), Power Default Services, Inc. ("Power Default"), and The Bank of New York

25   Mellon Trust Company, N.A. ("BONY") (collectively "Defendants").

26   **I. BACKGROUND**

27        On July 25, 2012, Plaintiff Nimal Susantha Diunugala initiated this action by

28   filing the Complaint with the San Diego County Superior Court. (ECF No. 1-2).  On

August 24, 2012, Defendants jointly filed a Notice of Removal to this Court, alleging diversity jurisdiction. (ECF No. 1). On August 31, 2012, Defendants filed a motion to dismiss the Complaint. (ECF No. 6). On January 18, 2013, the Court granted Defendants' motion to dismiss the Complaint. (ECF No. 15).

On May 19, 2013, Plaintiff filed the First Amended Complaint. (ECF No. 19). On June 6, 2013, Defendants filed a motion to dismiss the First Amended Complaint. (ECF No. 20). On October 3, 2013, the Court granted in part and denied in part Defendants' motion to dismiss, and dismissed all claims without prejudice except for the cause of action for violation of the Truth in Lending Act, 15 U.S.C. § 1641g. (ECF No. 29).

On May 29, 2014, the Court issued an Order granting Plaintiff's amended motion for leave to file a second amended complaint. (ECF No. 54).

On June 6, 2014, Plaintiff filed the Second Amended Complaint. (ECF No. 55). On June 26, 2014, Defendants filed the motion to dismiss the Second Amended Complaint. (ECF No. 56). On January 21, 2015, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss the second amended complaint. (ECF No. 78). The Order stated that "[t]he Motion to Dismiss the third cause of action for violation of TILA is denied. In all other respects, the Motion to Dismiss is granted, and the remaining causes of action are dismissed." *Id*. at 32.

On May 18, 2015, Defendant BONY filed a motion for summary judgment on Plaintiff's TILA claim. (ECF No. 85). On June 30, 2015, the Court issued an order granting the motion for summary judgment. (ECF No. 86). The Order stated "that the Plaintiff's TILA claim is barred by the one-year statue of limitations." *Id*.

On September 3, 2015, the Court issued an order granting Plaintiff's Amended Motion for Leave to Amend the Pleadings (ECF No. 90).

On September 10, 2015, Plaintiff filed the Third Amended Complaint. (ECF No. 94). On September 28, 2015, Defendants filed the motion to dismiss the Third Amended Complaint with prejudice. (ECF No. 95-1). On October 19, 2015, Plaintiff filed an

1 | opposition to the motion to dismiss the Third Amended Complaint. (ECF NO. 97). On
2 | October 26, 2015, Defendants filed a reply. (ECF No. 98).

3 |      The Third Amended Complaint asserts the following causes of action against: (1)
4 | negligence; (2) violation of Real Estate Settlement Procedures Act ("RESPA"), 12
5 | U.S.C. § 2605; (3) fraud; and (4) violation of California Business & Professions Code
6 | § 17200. The Third Amended Complaint asserts a class action pursuant to California
7 | Business & Professions Code § 17203 on behalf of "[a]ll California residential loan
8 | borrowers with loans foreclosed on by Bank of New York Mellon and/or AHMSI after
9 | being told that their foreclosure sale was postponed from January 1, 2015 through to the
10 | present," "[a]ll . . . borrowers with loans foreclosed on by Bank of New York Mellon
11 | and/or AHMSI after being told that their [Home Affordable Modification Program
12 | ("HAMP")] loan modification was being denied due to missing documents from January
13 | 1, 2010 through the present," and "[a]ll . . . [b]orrowers where AHMSI failed to provide
14 | a full payment history or amount owed on a California residential loan after obtaining
15 | a [Qualified Written Request ("QWR")] as required under 12 U.S.C. §2605 within the
16 | past two years." (ECF No. ¶ 46).

17 | **II. ALLEGATIONS OF THE THIRD AMENDED COMPLAINT**

18 |      "In early 2006, Plaintiff purchased real property at 987 Merced River Road in
19 | Chula Vista, California . . . as his personal residence." *Id*. ¶ 11. "Plaintiff used
20 | approximately $206,458.33 of his cash savings as a down payment on the home to be
21 | secured by a conventional loan from American Broker Conduit." *Id*. ¶ 12. "The TILA
22 | Statement represented that Plaintiff would be obligated to pay $2,273.44 for the first 60
23 | months and then $2,928.71 starting in 2011. The loan type on the TILA Statement
24 | represented it was "conventional." *Id*. ¶ 15.

25 |      "[P]laintiff was not put in a conventional loan product. Instead he was given a
26 | predatory LIBOR loan (interest only) which did not accurately reflect the full amortizing
27 | monthly mortgage obligation." [Plaintiff's] initial monthly payments were $1,752.06 per
28 | month and then increased in excess of $3,000.00 per month shortly thereafter. Plaintiff

requested a Qualified Written Request from AHMSI on June 3, 2009 as a result." *Id*. ¶ 16.

"Plaintiff . . . was told by AHMSI that he qualified for a loan modification but he had to miss three payments on his mortgage. Plaintiff missed the three monthly mortgage payments and AHMSI gave him a loan modification in April 2010 to cure his default. However, the loan modification AHMSI gave him did not result in a more affordable monthly mortgage payment. In order to cure his default and save his home from foreclosure, Plaintiff signed the loan modification agreement and began paying his new monthly mortgage payments which actually increased to $3,162.23." *Id*. ¶ 17.

"In late 2010, Plaintiff sought legal advice and hired the Law Offices of Shahnaz Hussain to assist him with negotiating a more favorable loan." *Id*. ¶ 18. "The law firm sent a Qualified Written Request 'QWR' to Plaintiff's servicer, Defendant AHMSI on November 18, 2010." *Id*. ¶ 19. "[O]n or about January 11, 2011, Stephanie Ellis, employee of AHMSI, wrote Plaintiff's attorney offering a number of 'work out' options including a loan modification. [Ellis] represented that '. . . American Home Mortgage Servicing, Inc. will complete an init[ial] review and a negotiator will be assigned within 30 business days of the receipt of the necessary documentation.'" *Id*. ¶ 60. "A copy of the promissory note was included with the January 11, 2011 letter." *Id*. ¶ 23. "However, the complete loan payment history was not." *Id*. ¶ 24.

"[AHMSI] represented that . . . a complete 'Initial Package' aka loan modification application . . . had to [be] submit[ted] [and] consist[] of three documents: (1) a Request for Modification and Affidavit form (RMA), (2) an IRS Form 4506T-EZ or Form 4506-T, and (3) documentary evidence of all income." *Id*. ¶ 25. "Plaintiff sent AHMSI a complete . . . loan modification application, including but not limited to (1) a signed Request for Modification and Affidavit form, (2) an IRS Form 4506T-EZ or Form 4506-T, and (3) documentary evidence of all income." *Id*. ¶ 26.

"On March 17, 2011 AHMSI drafted and sent a letter to Plaintiff representing that they did not have his 'Completed and signed Request for modification and Affidavit.'"

"AHMSI requested that Plaintiff fax it by April 1, 2011 along with documentation to substantiate the use of rental income." *Id*. ¶ 62. "Plaintiff . . . alleges thereon that AHMSI mishandled [Plaintiff's] paperwork by losing it or destroying the RMA." *Id*. ¶ 63. "Rental income is listed on the RMA, [Plaintiff] begs the question as to how AHMSI knew about the rental income if they in fact, did not have the RMA." *Id*. ¶ 64.

"On March 26, 2011 Plaintiff re-faxed AHMSI . . . a complete loan modification application package (RMA)." *Id*. ¶ 65. "On May 3, 2011 AHMSI mishandled his application papers and erroneously drafted another letter and sent it to Plaintiff representing that the 'Last two (2) months of pay stubs  not received' and were missing from Plaintiff's loan modification application package." *Id*. ¶ 66.

"Plaintiff faxed AHMSI the required documents again and on June 29, 2011 AHMSI sent a letter erroneously stating that AHMSI could not approve the loan modification because they did not have a copy of the most  recent signed federal income tax return." *Id*. ¶ 29. "A copy of Plaintiff's relevant, signed federal income tax was not requested in the initial application and was not needed to be a complete application." *Id*. ¶ 69. "Nevertheless, Plaintiff . . . faxed AHMSI a complete signed copy of [Plaintiff's] most recent federal tax return . . . ." *Id*. ¶ 70.

"[O]n August 17, 2011 AHMSI erroneously sent Plainiff a letter denying his application for a loan modification on the grounds [Plaintiff] did not send in all verified paperwork." *Id*. ¶ 30. "Plaintiff resubmitted his papers again by fax and AHMSI sent a letter dated September 14, 2011 erroneously  asserting once again that '…the documents were incomplete.'" "The letter stated that '*2 Two most recent pay stubs for all employed borrowers showing year-to-date earnings' were on the 'wrong form.'" *Id*. ¶ 31.

"AHMSI . . .  assigned Anita D. Chandler as Plaintiff's Relationship Manager on October 27, 2011." *Id*. ¶ 32. "There was no mention of any missing documents." *Id*. ¶ 75. "Instead of Anita D. Chandler reviewing . . . and modifying Plaintiff's loan, another letter was drafted on November 2, 2011 showing AHMSI mishandled his application

1  paper once again by stating that Plaintiff's RMA was missing and it needed to be faxed

2  to AHMSI by November 17, 2011." *Id.* ¶ 76.

3         "Plaintiff's loan applications were being denied based on 'missing paperwork'

4  although Plaintiff used a HUD approved agency, Community Housing Works to prepare

5  and send his application in with all required documents." *Id.* ¶ 77.

6         "In or about January 2012, Plaintiff reached out to Mr. Applegate who supervised

7  Ms. Chandler and implored [Mr. Applegate] to look over [Plaintiff's] situation . . . ." *Id.*

8  ¶ 33. "Plaintiff wrote AHMSI on February 6, 2012 informing them that the stress had

9  led to several failed attempts of suicide and that [Plaintiff] had paid over $255,000.00

10 on the down payment and was in a predatory loan." *Id.* ¶ 34. "[Plaintiff] said that the

11 'AHMSI staff is constantly harassing asking for endless documents' and implored that

12 they go over [Plaintiff's] file and give him a loan modification because he did not want

13 to lose his home." *Id.* ¶ 34.

14        "On March 1, 2012 AHMSI sent a follow up letter to Plaintiff stating 'the

15 government-funded Home Affordable Modification Program (HAMP) was denied

16 because the necessary paperwor[k] was not received in a timely manner . . . .'" *Id.* ¶ 36.

17 "The letter went on to state '. . . your inquiry references issues regarding the origination

18 of your loan and suggests that the mortgage loan officer or broker may have engaged in

19 dishonest behavior that yield spread premiums or other fees that were paid and that the

20 terms of the loan were not fully disclosed at the closing of your loan.' It also assured

21 Plaintiff that they were just trying to collect to make sure he did not incur late fees or

22 other charges." *Id.* ¶ 79.

23        "A few days later Plaintiff received another Loan Modification application

24 package from AHMSI dated March 6, 2012 with a letter inside of it giving Plaintiff

25 another chance at a HAMP modification and in house modification." *Id.* ¶ 37.

26        "Enclosed was another document captioned SPECIAL INFORMATION

27 REGARDING YOUR HAMP REQUEST. The third paragraph was captioned

28 FORECLOSURE SUSPENSION and said in pertinent part:

1
2
3
4

If your loan already has been referre[d] to foreclosure, we will continue the process while we evaluate your loan for HAMP. While **we will take steps to ensure that no foreclosure sale will be conducted so that you will not lose your home during the HAMP evaluation**, please note that the court having jurisdiction or the public official charged with carrying out the foreclosure may fail or refuse to halt the sale. . . .

5
6
7
8
9

Because the HAMP evaluation and the process of foreclosure may proceed at the same time, you may continue to receive foreclosure or eviction notices . . . or you may see steps being taken to proceed with a foreclosure sale of your home. Do not ignore these Foreclosure Notices! While **we will take measures to ensure that you will not lose your home during the HAMP evaluation**, to protect your rights under applicable law, you may need to respond to these notices or take other actions. **If you have any questions about the foreclosure process and the evaluation of your HAMP request, contact us at 877-304-3100.**

*Id*. ¶ 38.

10
11
12
13
14
15
16
17

"On April 2, 2012 an AHMSI employee named Natashia told Plaintiff over the phone that his loan modification was denied." *Id*. ¶ 39. "On April 2, 2012, Plaintiff . . . spoke to Anita D. Chandler  who told [Plaintiff] not to worry that the pending foreclosure sale on his home had been postponed and he was being considered for another loan modification." *Id*. ¶ 40. "[Plaintiff] was assured that the denial was erroneous and a new modification application was going to be reviewed and that the sale of his home was postponed." *Id*.  ¶ 80.

18
19
20
21
22
23

 "Without warning or the standard time to appeal or receive written notice of this decision which is 30 days, the title to [Plaintiff's]  home was transferred . . . ." *Id*. ¶ 81. "Seven days later, on April 9, 2012 Defendant BONY Mellon took Plaintiff's home by credit bid of $425,000.00 at foreclosure auction. This was approximately the same amount that Mr. Diunugala represented was affordable for him to pay in his letter to AHMSI . . .  two months earlier." *Id*. ¶ 41.

## III.  STANDARD OF REVIEW

24
25
26
27
28

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient

1  facts to support a cognizable legal theory.  *See Balistreri v. Pac. Police Depot*, 901 F.2d

2  696, 699 (9th Cir. 1990).

3       "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

4  requires more than labels and conclusions, and a formulaic recitation of the elements of

5  a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

6  (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss, a court must

7  accept as true all "well-pleaded factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662,

8  679 (2009).  However, a court is not "required to accept as true allegations that are

9  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

10  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a

11  complaint to survive a motion to dismiss, the non-conclusory factual content, and

12  reasonable inferences from that content, must be plausibly suggestive of a claim entitling

13  the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)

14  (quotations omitted).

15  **IV.  REQUEST FOR JUDICIAL NOTICE**

16       Plaintiff requests that the Court take judicial notice of twelve documents.  (ECF

17  No. 96).  The first document is A Deed of Trust recorded on June 12, 2009 in the

18  Official Records of San Diego County (filing number 2006-0223969), attached as

19  Exhibit A.  The second document is An Assignment of Deed recorded on June 12, 2009,

20  in the Official Records of San Diego County (filing number 2009-0321358), attached

21  as Exhibit B.  The third document is An Assignment of Deed of Trust recorded on June

22  12, 2009, in the Official Records of San Diego County (filing number 2009-0321359),

23  attached as Exhibit C.  The fourth document is An Assignment of Deed of Trust

24  recorded on May 31, 2012, in the Official Records of San Diego County (filing number

25  2012-0317681), attached as Exhibit D.  The fifth document is A Substitution of Trustee

26  recorded on June 15, 2009, in the Official Records of San Diego County (filing number

27  2009-0324547), attached as Exhibit E.  The sixth document is A Notice of Default and

28  Election to Sell under Deed of Trust recorded on May 18, 2009, in the Official Records

of San Diego County (filing number 2009-0261843), attached as Exhibit F. The seventh document is A Notice of Trustee's Sale recorded on August 19, 2009, in the Official Records of San Diego County (filing number 2009-0464122), attached as Exhibit G. The eighth document is A Notice of Rescission recorded on April 12, 2010, in the Official Records of San Diego County (filing number 2010-0178585), attached as Exhibit H. The ninth document is A Notice of Default and Election to Sell under Deed of Trust recorded on June 15, 2011, in the Official Records of San Diego County (filing number 2011-0303289), attached as Exhibit I. The tenth document is A Substitution of Trustee recorded on July 19, 2011, in the Official Records of San Diego County (filing number 2011-0365565), attached as Exhibit J. The eleventh document is A Notice of Trusee's Sale recorded on September 13, 2011, in the Official Records of San Diego County (filing number 2011-0471741), attached as Exhibit K. The twelfth document is A Trustee's Deed Upon Sale recorded on April 13, 2012, in the Official Records of San Diego County (filing number 2012-0216671), attached as exhibit L.

   "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). "[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee*, 250 F.3d at 689 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)). Courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation and internal quotations omitted). Defendants do not object to or question the authenticity of the documents filed by Plaintiff therefore the Court will take judicial

1  notice of Plaintiff's twelve documents.

2  **V. DISCUSSION**

3      **A.    Negligence**

4      Plaintiff's first cause of action alleges negligence against all Defendants.  Plaintiff

5  alleges that Defendants AHMSI, Homeward Residential, and/or BONY "owed Plaintiff,

6  a duty of reasonable care when handling [Plaintiff's] loan modification process . . . ."

7  (ECF No. 94 ¶ 82).  Plaintiff alleges that Homeward Residential is jointly liable for the

8  acts of AHMSI as the successor servicer.  *Id.* ¶ 56.  Plaintiff alleges that to the extent

9  BONY was involved in the process of modifying Plaintiff's loan, BONY owed Plaintiff

10  a general duty of care.  *Id.* at ¶ 94.

11      Plaintiff alleges that "Defendants intended to affect the Plaintiff by offering work

12  out options and inducing them to default [and] enter into these programs in order to

13  modify their loan."  *Id.* ¶ 85.  Plaintiff alleges that once Plaintiff defaulted on the loan,

14  "it was foreseeable that the Plaintiff would be harmed by any unreasonable delay of

15  longer than three months from the mishandling of Plaintiff's loan modification

16  application . . . ."  *Id.* ¶ 86.  Plaintiff alleges that "[f]oreclosure, accumulated interest and

17  fees, and the loss of opportunity to save the home by other means was substantially

18  certain to occur upon an erroneous denial of a modification request, erroneous/illusory

19  modification offer and/or delayed modification notice."  *Id.* ¶ 88.

20      Defendants contend that they owe no duty of care to the Plaintiff.  (ECF No. 95-1

21  at 12).  "Defendants' position remains that as long as it does not act outside of its scope

22  as a lender of money, it owes Plaintiff no duty of care in the loan modification

23  application process or review."  (ECF No. 98 at 2).  Defendants contend that the

24  Plaintiff's Third Amended Complaint fails to allege any new factual allegations that give

25  rise to a duty of care.  (ECF No. 95-1 at 14).  Defendants contend that Plaintiff's default,

26  not Defendants' conduct, caused the alleged injury.  *Id.* at 15.

27      Plaintiff contends that Defendants owe Plaintiff a general duty of care.  (ECF No.

28  97 at 6).  Plaintiff contends that the Third Amended Complaint includes "factual

allegations showing specific mishandling of Plaintiff's documents after an agreement to consider Plaintiff's modification application." *Id.* at 5.  Plaintiff contends that the Defendants placed the Plaintiff in a position creating a need for a loan modification by "actively deceiv[ing]" Plaintiff into missing three monthly payments in order to obtain a loan modification application package. *Id*. at 6.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th  269, 278 (2004).  "[F]or purposes of a negligence claim, 'as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 740 (2010) (quoting *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991)); *see also Wagner v. Benson*, 101 Cal. App. 3d 27, 34-35 (1980).  "[A] lender that agrees to consider a borrower's loan modification application does not act outside its conventional role as a money lender and does not owe a duty of care." *Hernandez v. Select Portfolio, Inc.*, No. CV15-01896, 2015 WL 3914741, at *22 (C.D. Cal. June 25, 2015).  "Absent special circumstances, there is no duty for a servicer to modify a loan." *See Bunce v. Ocwen Loan Servicing, LLC*, No. 13-00976, 2013 WL 3773950, at *5-6 (E.D. Cal. July 17, 2013) (collecting cases). "However, even when the lender is acting as a conventional lender, the no-duty rule is only a general rule."  *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014) (internal citations omitted).

In California, the test for determining whether a financial institution owes a duty of care to a borrower-client involves the balancing of various factors, referred to as the *Biakanja* factors, "among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the

defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1098 (Cal. Ct. App. 1991) (citing *Connor v. Great Western Sav. & Loan Assn.*, 447 P.2d 609, 617 (Cal. 1968) (quoting *Biakanja v. Irving* 320 P.2d 16, 19 (Cal. 1958)). Plaintiff relies upon Alvarez, which held that the Biankanja factors weighted in favor of imposing a duty on defendants because defendants allegedly agreed to consider modification of the plaintiffs' loans. *Alvarez*, 228 Cal. App. 4th at 948-49 (citing *Garcia v. Ocwen Loan Servicing, LLC*, No. C10-0290, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010)). As this Court previously stated:

> In *Alvarez* and *Garcia*, the plaintiffs alleged specific mishandling of plaintiffs' documents by defendants and the courts relied on the mishandling of plaintiffs' documents to find that the *Biankaja* factors weighed in favor of finding that a duty existed. *See Alvarez*, 228 Cal. App. 4th 941 at 945 ("The lenders allegedly breached this duty by . . . mishandling plaintiffs' applications by relying on incorrect information ... Alvarez was told . . . that his application for modification . . . had been rejected because his monthly gross income of $2,554.75 was inadequate, whereas his paystubs showed that his monthly gross income was $6,075. With respect to the loan on one of his rental properties, he was told that his application showed a $6,318.98 deficit in monthly income, while Alvarez alleges there was no such deficit. With respect to the loan on his second rental property, the complaint alleges that defendants falsely advised him that no documents had been submitted for review when in fact documents were sent to and received by defendants."); *Garcia*, 2010 WL 1881098 at *1 ("Upon receipt of the requested documents . . . Defendant routed the documents to the wrong department. Instead of routing the documents to its Home Retention Department, Defendant's employee routed them to its Short Sale Department.").

(ECF No. 78 at 11-12).

The Court finds that Plaintiff's factual allegations are not sufficient to conclude that Defendants agreed to consider Plaintiff's loan modification, thereby creating a duty of care. Plaintiff alleges that after he missed three monthly payments and defaulted on his loan, the Plaintiff received a loan modification to cure his default. (ECF No. 94 ¶ 17). However, the loan modification "did not result in a more affordable monthly mortgage payment." *Id*. Plaintiff sought another loan modification and submitted his "Initial Package" to be considered for a HAMP evaluation. *Id*. at ¶ 26. Plaintiff alleges that during this evaluation, Defendants agreed to consider Plaintiff's loan modification,

creating a duty of care.  However, the HAMP request specifically states:

> While we are considering your Home Affordable Modification program (HAMP) request, you should continue to make your current monthly mortgage payments. . . . While we will take steps to ensure that no foreclosure sale will be conducted so that you will not lose your house during the HAMP evaluation, please note that the court having jurisdiction or the public official charged with carrying out the foreclosure may fail or refuse to stop the sale.  Please note that we cannot begin to evaluate you for HAMP until we receive the "Initial Package[]" . . . . [T]he HAMP evaluation and the process of foreclosure may proceed at the same time, you may continue to receive foreclosure or eviction notes. . . . **Do not ignore these Foreclosure Notices!**

(ECF No. 94 at 90).

Plaintiff was informed that he should continue making payments during the HAMP evaluation process, that the Defendants would not evaluate Plaintiff's loan modification request until Defendants received the necessary documents, and that Plaintiff's home could be foreclosed on during the evaluation process.  Unlike *Alvarez* and *Garcia*, Plaintiff's allegations do not allege specific mishandling of Plaintiff's documents after an agreement to consider Plaintiff's modification application.  The facts alleged do not show that Defendants acted outside of the conventional role of money lenders and therefore did not owe Plaintiff a duty of care.  *See Hernandez*, 2015 WL 3914741 at *2; *Bunce*, 2013 WL 3773950 at *5-6.  The motion to dismiss the first cause of action for negligence is granted.

**B.    RESPA**

Plaintiff's second cause of action alleges violation RESPA, 12 U.S.C. § 2605, against Defendant AHMSI.

Defendant AHMSI contends that Plaintiff's RESPA claim must be dismissed because Defendant Homeward provided information requested by Plaintiff in the QWR. (ECF No. 95-1 at 16).  Defendant AHMSI contends that in the November 18, 2010, QWR, there is no mention of Plaintiff's $31,752.00 purported payment, nor any request on the part of the Plaintiff or his counsel to make a correction to his account in any amount.  (ECF No. 98 at 5-6).  Defendant AHMSI contends that the response to the QWR complied with RESPA and that Plaintiff did not request any further information.

*Id.* at 6.  Defendant AHMSI contends that Plaintiff continues to be unable to plead a causal connection between the alleged RESPA violation and the damages alleged in the Third Amended Complaint.  *Id.*

Plaintiff contends that AHMSI failed to list the amount of current debt owed on the loan, failed to account for the $31,752.06 that Plaintiff paid in 2007, and failed to show Plaintiff a payment history that pre-dates July 2, 2008.[1] (ECF No. 97 at 10; ECF No. 94 at 21).  Plaintiff contends that "[a]s a direct and proximate result of AHMSI's actions and/or failure to act as alleged . . . Plaintiff incurred out of pocket costs in obtaining documents from the loan origination, paying for forensic loan auditors and attorneys, collecting documents for correspondence and missed work.  Plaintiff also incurred excess debt obligation which he was required to report to the IRS and on his credit report to his damage.  Plaintiff further lost the opportunity to cure his default." (ECF No. 94 at 21).

A QWR must request information relating to the servicing of a loan.  12 U.S.C. § 2605(e)(1)(A).  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amount received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(e)(4)(J)(1).  "'Servicing,' so defined, does not include the transactions and circumstances surrounding a loan's origination – facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).  "Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors."  *Id.* at 667.

12 U.S.C. § 2605 specifies the required response to a borrower's QWR.  12 U.S.C.

---

[1]Plaintiff alleges in his Second Amended Complaint that "on November 27, 2007, [P]laintiff withdrew $30,000 from his IRA account and sent AHMSI $31,752.06 . . . ." "AHMSI accepted and cashed the check . . . ."  (ECF No. 55 at 33).  These allegations are not included in Plaintiff's Third Amended Complaint.

§ 2605 states:

> Not later than 30 days . . . after the receipt from any borrower of any qualified written request . . . the servicer shall . . . (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(c).

If a loan servicer fails to comply with the provisions of 12 U.S.C. § 2605, a borrower is entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605], in an amount not to exceed $2,000."[2]   12 U.S.C. § 2605(f)(1).   "Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim." *Molina v. Wash. Mut. Bank*, No. 09-CV-894, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010).   "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm." *Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 2:09-1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted).   A plaintiff is only entitled to recover for the loss that relates to the RESPA violation.   *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010); *Torres v. Wells Fargo Home Mortg., Inc.*, No. 10-4761, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011).

In this case, Plaintiff's November 18, 2010 letter "to identify the master servicer, current creditor, for the payment history on Plaintiff's loan, and amount of debt currently owed on the loan" constitutes a QWR.   (ECF No. 94 ¶ 99).   Plaintiff requested "[a] complete payment history, including the date of each and every debit and credit . . . ." (ECF No. 94 at 53).   Plaintiff requested servicing related information and the amount of debt currently owed on the loan.

---

[2]  Effective January 10, 2014, the statutory maximum increased from $1,000 to $2,000.

Defendant AHMSI responded on January 11, 2011, stating in part:

As of the date of this letter, the account is past due for the October 2010 payment and subsequent payments, in the amount of $3,200.94 each. We have enclosed a copy of the payment history, Adjustable Rate Note, and Deed of Trust for your review. Currently, the account is not in a foreclosure status.

(ECF No. 94 at 58).

Plaintiff's QWR did not request information about his payment of $31,752.06. (*See* ECF No. 94 at 53-54). This payment made in 2007 predated the 2010 loan modification. The response states that a "copy of the payment history" was provided. (ECF No. 94 at 58). There are no factual allegations that Plaintiff made any additional requests for information. The Court accepts all facts alleged in the complaint as true, and finds that the complaint fails to plead facts to show that Plaintiff is entitled to relief under RESPA or that any alleged RESPA violation caused Plaintiff damages. *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[T]he loss alleged must be related to the RESPA violation itself."); *Torres v. Wells Fargo Home Mortg., Inc.*, No. 10-4761, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011) ("The plaintiff must . . . allege a causal relationship between the alleged damages and the RESPA violation."). The Court finds that these facts do not plausibly infer a grounds for a RESPA violation. The motion to dismiss the second cause of action for violation of RESPA is granted.

## C. Fraud

Plaintiff's third cause of action alleges fraud against Defendants AHMSI and BONY. Defendants contend that Plaintiff's three allegations of fraud are insufficient to state a claim and are barred by the statute of limitations. Plaintiff contends that the allegations of misrepresentation are sufficient to state a claim and that the amended complaint relates back to the original complaint.

The elements of a claim for fraud are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance;

and (5) resulting damages." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (citing *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)). "It is well-established in the Ninth Circuit that . . . claims for fraud . . . must meet Rule 9(b)'s particularity requirement." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("Rule 9(b)'s particularity requirement applies to state-law causes of action."). Pursuant to Federal Rule of Civil Procedure 9(b), a party alleging fraud must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (quotations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where and how' of the misconduct charged." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1994)).

Claims of fraud must be filed within three years of the discovery by the aggrieved party "of the facts constituting the fraud." *See* Cal. Code Civ. P. § 338(d). An amended complaint is considered a new action for purposes of the statute of limitations only if the claims do not "relate back" to an earlier timely filed complaint. Under the relation-back doctrine, an amendment relates back to the original complaint if the amendment (1) rests on the same general set of facts; (2) involves the same injury; and (3) refers to the same instrumentality. *Nogart v. Upjohn Co.*, 21 Cal. 4th 383, 408-409 (1999). However, the doctrine will not apply if "the plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint." *Stockwell v. McAlvay*, 10 Cal. 2d 368, 375 (1937).

In this case, Plaintiff alleges three misrepresentations in the Third Amended Complaint against AHMSI and BONY. Plaintiff alleges that "[o]n multiple occasions starting in or about October 2010 throughout 2011 . . . AHMSI through its authorized

representative, Stephanie Ellis represented that it would evaluate and identify a work out solution including considering Plaintiff for a loan modification but Plaintiff had to miss three monthly payments." ( ECF No. 94 ¶ 111).  Plaintiff further alleges that on "[o]n multiple occasions starting in or about October 2010 throughout 2011 . . . AHMSI through its authorized representatives, Stephanie Ellis, Anita D. Chandler, and Mr. Applegate, represented that they would work swiftly and accurately [to] process all of Plaintiff's loan modification applications while his loan was being reviewed for a loan modification by AHMSI . . . ." *Id.*

Defendants contend that these two allegations of misrepresentation are not alleged with particularity and that Plaintiff fails to allege facts to show how these statements were false. (ECF No. 95-1 at 18).  Plaintiff contends that he has amended the pleading to include specific mishandling of his loan documents. (ECF No. 97 at 14).  Plaintiff contends that Defendants gave Plaintiff a loan modification that "did not result in a more affordable monthly payment." (ECF No. 94 ¶ 17).

The Court finds that Plaintiff fails to allege facts to show that Defendants made fraudulent misrepresentations to Plaintiff.  Plaintiff does not allege facts to show that a misrepresentation was made with the intent to induce Plaintiff's reliance.  Plaintiff also fails to plausibly allege that Defendants' employees could have known of their falsity. Plaintiff has not adequately alleged that Defendants committed fraud when the Defendants offered to "identify a work out solution" but "fail[ed] to provide a more affordable monthly mortgage payment." (ECF 94. ¶¶ 17, 111).  Plaintiff has made general allegations that Defendants mishandled his paperwork.  *Id.* at 16-17.  Such allegations are insufficient to support a finding that by failing to work swiftly and accurately to process Plaintiff's loan modifications, Defendants were fraudulent.

Plaintiff alleges that

On April 2, 2012, a mere 7 days before Bank of New York Mellon and AHMSI foreclosed on Plaintiff's home, AHMSI, through D. Chandler, falsely represented to Plaintiff that no foreclosure sale would occur while Plaintiff was still being considered for "other foreclosure avoidance programs." . . . Anita D. Chandler of AHMSI told Plaintiff not to worry

[and] that the foreclosure sale date of April 9, 2012 was being postponed. (ECF No. 94 ¶ 111). Plaintiff alleges that "[t]hese statements were consistent with the documents contained in the loan modification application package Plaintiff received that was dated March 6, 2012." *Id.* Plaintiff alleges that "[i]n doing so, AHMSI expressly informed Plaintiff he 'will not lose [his] home during this review period.'" *Id.*

Defendants contend that "it was Plaintiff's default, and not any act by Homeward, that caused the foreclosure . . . ." (ECF No. 95-1 at 20). Defendants further contend that alleged statements made to Plaintiff "that his foreclosure sale would be postponed in the event he was being considered for other options or while his application was under review were not false" because Plaintiff "does not allege that he was being considered for any foreclosure avoidance programs nor that he had a loan modification application under review." *Id.* at 18-19. Defendants contend that "Plaintiff alleges that Homeward invited Plaintiff to pursue another modification in a letter dated March 6, 2012, but Plaintiff does not allege that he ever pursued any further options after his application was denied on December 15, 2011." *Id.*

Plaintiff further alleges that Plaintiff was denied a HAMP modification in August 2011 and on December 15, 2011. (ECF No. 94 at 8, 68). The March 6, 2012 letter sent to Plaintiff from Defendant AHMSI stated in part, "During a HAMP evaluation we will not refer your home to foreclosure." *Id.* at 90. "Please note that we cannot begin to evaluate you for HAMP until we receive the 'Initial Package'. . . ." *Id.* Plaintiff contends that "[t]he HAMP/MHA guidelines require the servicer to wait 30 days prior to foreclosure on all loans that were denied a HAMP modification so that the homeowner could appeal and escalate the determination by the servicer." (ECF No. 97 at 14). Plaintiff contends that AHMSI "stated in AHMSI's March 6, 2012 letter that AHMSI would not do anything to press forward with the sale . . . ." *Id.*

Plaintiff's home was foreclosed upon in April 2012. There are no alleged facts to show that Plaintiff pursued any further foreclosure avoidance programs after his

application was denied on December 15, 2011.  Plaintiff was not being evaluated for HAMP at the time of the foreclosure.  The foreclosure sale in April 2012 was more than 30 days after the denial of Plaintiff's two previous HAMP modification applications. The Court finds that there are no facts alleged to show that Defendants committed fraud. The motion to dismiss the third cause of action for fraud is granted.

### D.    Unfair Competition Law

Plaintiff's fourth cause of action alleges that all Defendants violated California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200.

Defendants contend that Plaintiff lacks standing to bring a UCL claim.  (ECF No. 95-1 at 21).  Defendants contend that Plaintiff lost his home because his own "admitted default on his mortgage loan precipitated nonjudicial foreclosure." *Id*.  Defendants further contend that Plaintiff's UCL claim fails because all Plaintiff's claims fail as a matter of law.  (ECF No. 98 at 10).

In pertinent part, Plaintiff contends that Defendants

violat[ed] 12 USC § 2605 by failing to give the borrower a complete and accurate payment history and current amount owed on the loan.

As a direct result and proximate consequence of Defendant BONY Mellon and AHMSI's business practice/act with regard to failing to work with Plaintiff in good faith, Diunugala lost money and/or property in that it caused Plaintiff to lose his home through foreclosure and damages his credit.

(ECF No. 94 ¶¶ 133, 144).

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  A plaintiff alleging a UCL claim must satisfy UCL standing requirements.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009).  Private standing under the UCL is limited to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see also Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839 (9th Cir. 2011).  "This provision requires [plaintiff] to show that she has lost

money or property sufficient to constitute an injury in fact under Article III of the Constitution, and also requires a causal connection between defendant's alleged UCL violation and her injury in fact." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010) (quotation omitted). Several courts have found that a plaintiff has not suffered an injury in fact when the loss suffered is a result of a plaintiff's default on the loan. *See, e.g.*, *Bernardi v. JPMorgan Chase Bank, N.A.*, No. 11-cv-4212, 2012 WL 2343679, at *5 (N.D. Cal. June 20, 2012); *Serna v. Bank of Am., N.A.*, No. 11-10598, 2012 WL 2030705, at *5 (C.D. Cal. June 4, 2012); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-1390, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011).

In this case, as discussed with respect to the RESPA cause of action, the Court has determined that Plaintiff has not alleged facts sufficient to support an inference that Defendants were engaged in unlawful, unfair, or fraudulent business acts or practices. Plaintiff's Third Amended Complaint does not alleged sufficient facts to show that Plaintiff has standing to assert a claim pursuant to the UCL. *See, e.g.*, *Bernardi*, 2012 WL 2343679, at *5. The motion to dismiss the fourth cause of action for violation of California Business and Professions Code § 17200 is granted.

**E. Conclusion**

Defendants assert that "[i]n the Third Amended Complaint, Plaintiff reasserts four causes of action that have been brought before (and rejected by) this Court on a number of occasions. . . . Plaintiff . . . relies on the same basic set of factual allegations that this Court has previously considered and dismissed." (ECF No. 95-1 at 7). Defendants request that the Court dismiss the Third Amended Complaint with prejudice. In the opposition to the motion to dismiss, Plaintiff requests the Court to deny the motion and asks, "[i]f there is something that needs to be corrected, that the court state so and give Plaintiff leave to amend." (ECF No. 97 at 18).

The Court previously dismissed Plaintiff's initial Complaint and First Amended Complaint. The Court partially dismissed Plaintiff's Second Amended Complaint and subsequently granted Defendant BONY's motion for summary judgment on the

remaining claims in the Second Amended Complaint.  The Court has granted Plaintiff multiple opportunities to amend his claims.  The Third Amended Complaint again fails to allege facts sufficient to state a claim against Defendants.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad").  The Third Amended Complaint is dismissed in its entirety with prejudice.

## VI.  CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 94) is granted with prejudice.  The Clerk of the Court shall close the case.

DATED:  March 24, 2016

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

12cv2106-WQH-KSChh